# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

JEROME ALLEN BARGO,  PLAINTIFF
ADC #75423

v.  5:14CV00393-KGB-JTK

RAY HOBBS, et al.  DEFENDANTS

## REVISED PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**I.      Introduction**

Plaintiff Jerome Bargo is a state inmate incarcerated at the Varner Unit of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging Defendants retaliated against him, filed an improper disciplinary charge against him and convicted him in violation of his due process rights, and forced him to work beyond his physical capabilities. (Doc. No. 22). By Order dated April 8, 2015, this Court dismissed Defendants Hobbs, Watson, Naylor, Roland, Evans, and Iko, plus Plaintiff's retaliation, voice stress analysis, and deliberate indifference claims (Doc. No. 39). The remaining claims against Defendants Andrews, Waddle, and Phillips relate to the disciplinary charge and conviction, and work assignment. Plaintiff asks for monetary and injunctive relief.

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 87). Plaintiff had not filed a Response to the Motion at the time that this Court issued a Proposed Findings and Recommendation on December 23, 2015, recommending that the Motion be granted. (Doc. No. 96) Plaintiff subsequently filed a Response and Objections to the Recommendation (Doc. Nos. 97-103), and on September 13, 2016, United States District Judge

Kristine G. Baker declined to adopt the Recommendation and referred the matter back to me for consideration of Plaintiff's Responses to the Motion. (Doc. No. 107)

## II.     Amended Complaint

Plaintiff alleges that during an investigation into the unauthorized use of library computers, he and several other law library clerks were given computerized voice stress analysis (CVSA) tests. (Doc. No. 22, p. 4)  Based on the results of his test, Defendant Andrews charged him with failure to obey a verbal and/or written order of staff (12-1), and deliberately giving misinformation or falsely accusing another in the course of an official investigation (13-1). (Id., p. 6) Plaintiff claims the disciplinary charges were defective in three respects: they were not supported in the notice; did not set forth how he lied, deceived or gave misinformation; and were filed by an officer without personal knowledge of the incident. (Id., p. 7) He claims that at his hearing, Defendant Waddle improperly and arbitrarily pronounced him guilty, which resulted in a sentence of thirty days in punitive isolation and a reduction to class IV. (Id., p. 8) This also resulted in an increase in Plaintiff's custody level, which affected his ability to participate in programs and transfer to a less secure facility. (Id.)  Plaintiff further claims that Waddle created a hostile environment at the hearing, refused Plaintiff the opportunity to present his defense, refused to provide him a copy of the CVSA results, refused to reveal evidence which could exonerate Plaintiff, relied solely on the CVSA results, interrogated Plaintiff, and announced Plaintiff's sentence without appropriate deliberation.  Plaintiff further alleges that as a member of the classification committee, Defendant Andrews assigned him to a field utility job on May 8, 2014, despite the fact that Plaintiff was 59 years old at the time. (Id., p. 9) Plaintiff was forced to carry 40-50 pound bags of squash for up to one-fourth mile, pick squash in 90 degree heat, and perform grueling labor with a huge spade. (Id., pp. 9-10) Defendant Phillips refused to provide portable toilets during Plaintiff's assignment and

refused to provide back braces, tinted sunglasses, safety shoes, and gloves. (Id., p. 10)

### III. Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

#### A. Official Capacity

The Court agrees with Defendants, that Plaintiff's monetary claims against them in their official capacities should be dismissed, as barred by sovereign immunity. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65-66 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997). In addition, the injunctive relief claims should be dismissed. Plaintiff's allegations concern an isolated time period between May 1, 2014 (date of disciplinary) and September 18, 2014 (date Plaintiff was removed from field utility), and do not involve on-going events. Therefore, there is no showing of a real or immediate threat that Plaintiff will be wronged again. City of Los Angeles

v. Lyons, 461 U.S. 95, 111 (1983).

### B. Qualified Immunity

Defendants also argue they are protected from liability by qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

#### 1. Disciplinary Charges

According to the declaration of Defendant Andrews, during the time at issue he was

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

5

employed as the Deputy Warden of the Varner Unit. (Doc. No. 89-2, p. 4) In 2014, unauthorized programs were found on one of the computers in the Unit's law library, and an investigation was conducted by the ADC Internal Affairs Division. (Id.) On May 1, 2014, Andrews' supervisor, Warden Randy Watson, was notified that several inmates had been given voice stress tests, the results of which showed deception. (Id.) Watson then directed Andrews to issue disciplinary charges against these inmates, including Plaintiff Bargo. (Id., p. 2) Inmate behavior is governed by Administrative Directive (AD) 13-10, which provides that when charging an inmate with a rule violation, the officer should cite the violation which most accurately categorizes the behavior. (Id., pp, 2,) Rule violation 13-1 is defined as "deliberately giving misinformation or falsely accusing another in the course of an official investigation," and most accurately described the offense of deception during a voice stress test. (Id., p. 2) In addition, the Rule 12-1 violation stemmed from Plaintiff not telling the truth to the CVSA examiner after being told to do so. (Id.) Andrews' involvement with this incident was limited to the issuance of the disciplinary charge, which was later reviewed by the Chief Security Officer, who then forwarded it to the disciplinary office for a hearing. (Id., p. 3)

Following the issuance of the disciplinary charge, Defendant Waddle conducted a hearing on May 8, 2014 (Doc. No. 89-3, p.2) During the hearing, Waddle informed Plaintiff of the charges against him, asked Plaintiff how he would plead, and asked Plaintiff if he would like to make a statement. (Doc. No. 89-4) Plaintiff made a statement denying knowledge regarding the investigation, and Waddle asked Plaintiff several questions about his knowledge. (Id.) Plaintiff also asked Waddle about the witness statements he requested, and Waddle responded that he was in possession of all four of the requested statements. (Id.) After a few minutes, Waddle stated that following a review of the evidence, witness statements, and internal affairs investigation, he found

6

Plaintiff guilty of both charges. (Id.)

In his Response, Plaintiff claims that the disciplinary charge filed against him was deficient, in that it failed to identify the type of equipment he misused, how he disobeyed a verbal/written order of the staff, and the subject matter or nature of the violation. He claims he was not provided with a copy of the CVSA report, and therefore, was not able to present a plausible defense. He also claims the CVSA examiner never ordered him to tell the truth during the examination. With respect to the hearing, Plaintiff claims it was unfair because Defendant Waddle did not inform him of the evidence against him and did not disclose the CVSA report. Plaintiff states if the report had been disclosed he could have pointed out contradictions. Plaintiff also suspects that Waddle did not interview all four witnesses he requested, and that the CVSA report was not adequate evidence on which to support his decision.

Having reviewed the evidence and arguments presented by the parties, the Court finds that Plaintiff's allegations that Andrews and Waddle violated his due process rights are not supported by the evidence or the law, and that they are entitled to qualified immunity. The 12-1 violation was based on Plaintiff's failure to tell the truth to the CVSA examiner. The whole purpose of the CVSA test was to determine the truthfulness of Plaintiff's statement. (Doc. No. 89-1, p. 1) The test results indicated deception in one of Plaintiff's responses, as to whether he knew who provided the illegal software. (Id., p.2) According to the CVSA report, issued on April 25, 2014, the results were explained to Plaintiff by the examiner (Rowland) following the test (Id, p. 2). Plaintiff, however, states that he does not recall this conversation (Doc. No. 99, p. 2). In addition, the disciplinary charge issued against Plaintiff specifically set forth that Plaintiff lied during the course of an investigation. (Doc. No. 89-3, p. 1) Based on this allegation, Defendant Andrews determined that the charge of giving misinformation best fit the allegation, and there is no due process requirement

7

that a disciplinary be issued by an individual with personal knowledge of the investigation. In addition, Defendant Waddle notified Plaintiff of the charges against him, allowed him to make a statement, and considered the witness statements Plaintiff requested, prior to issuing his decision.

To support a claim of a violation of due process, Plaintiff must allege and prove that Defendants deprived him of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539 (1974).[2] In this case, where Plaintiff's liberty was at issue, he had a right to due process if the punishment resulted in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or affected the length of his sentence. Sandin v. Conner, 515 U.S. 472, (1995). However, administrative and disciplinary segregation, together with the temporary loss of certain privileges, is not the type of "atypical and significant" deprivation which creates a liberty interest under Sandin. Portley-El v. Brill, 288 F.3d 1063, 1065-66 (8th Cir. 2002). Therefore, Plaintiff's thirty-day sentence in punitive did not create a liberty interest to support a due process claim against Defendants. In addition, as noted above, Plaintiff was provided with the procedural due process protections set forth in Wolff: he was informed of the charges against him and asked how he wished to plead; he was afforded the opportunity to make a statement and present witness statements and evidence; the hearing examiner considered all the evidence prior to issuing a decision on the charges; and set forth his reasons in writing. (Doc. Nos. 89-3, 89-4) Plaintiff was then provided the opportunity to appeal the decision, and the conviction was affirmed by the Hearing Officer administrator and the ADC Director. (Doc. No. 89-3, p.3)

---

[2]In Wolff, the Court set forth minimum requirements of procedural due process prior to the deprivation of life, liberty of property. Those requirements include: written notice of the charges, disclosure of the evidence against the inmate, the opportunity to be heard and to present witnesses and documentary evidence, the right to confront and cross-examine witnesses, a neutral hearing examiner, and a written statement of the evidence relied on the and reasons justifying the decision. 418 U.S. at 558-559.

Plaintiff's allegations that Defendant Waddle interrogated him and created a hostile environment are not supported by the evidence. Defendants provided a video of the hearing, and while Defendant Waddle spoke in a loud voice to Plaintiff, Plaintiff did not act or claim to be threatened or uncomfortable, and was permitted to state his position and answer Waddle's questions. (Doc. No. 89-4)[3] His claim that he was not permitted to present his defense also is not supported by the video. He did not ask Waddle about the content of the witness statements, and his allegation that Waddle relied on the CVSA results does not support a due process claim. Due Process requires that the record contain "some evidence "to support the disciplinary decision, which can be "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 454-56 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. At 455-56. In this case, "some evidence" included the Internal Affairs Investigation Report, which included the CVSA results that Plaintiff was not truthful in his answer to one of the questions. (Doc. No. 89-3, p. 3; Doc. No. 89-4)[4] See Tedesco v. Secretary for the Department of Corrections, 190 Fed.Appx. 752, 757 (11th Cir. 2006), where evidence of a failed CVSA test and statements of the interviewing officer were considered "some evidence" to support a disciplinary conviction. See also Reeves v. Mohr, No. 4:11cv2062, 2012 WL 275166 (N.D. Ohio), where a CVSA supported plaintiff's

---

[3]In his hearing, although Plaintiff denied lying in the CVSA examination, stated that although he did not know who provided the software, he had a feeling he knew who did it, but that he was not specifically asked that question during the CVSA examination. (Doc. No. 89-4)

[4]Waddle also specifically stated that he considered the Plaintiff's witness statements prior to rendering his decision. (Id.)

disciplinary conviction. Although inmate contended that he was not permitted to question the CVSA operator, inmate did not allege or prove that he was denied a due process hearing.

Therefore, having reviewed the parties' submissions, the Court finds that Defendants Andrews and Waddle acted reasonably under the circumstances. No reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

### 2. Work Assignment

According to the Declaration of George Wilson, ADC Administrator of Medical and Dental Services, contracted medical providers, and not ADC employees, are responsible for determining an inmate's medical classification, which is based on a coding system which provides five medical classifications ranging from M-1 to M-5. (Doc. No. 89-5) A medical classification of M-2, which was assigned to Plaintiff Bargo, does not preclude a job assignment to field utility or hoe squad. (Id., p. 2) In addition, at the time of Plaintiff's assignment to field utility on May 8, 2014, the only health restriction in his medical file was for a cardiovascular diet. (Id., Doc. No. 89-8 - Plaintiff's health classification and restrictions form.) Plaintiff also received a job change to recreation porter, an inside job, on September 18, 2014. (Id., p. 3; Doc. No. 89-9) Wilson further stated that inmates can seek medical evaluations for illness or injury at any time, and restrictions can be changed by the medical provider, but not by ADC personnel. (Id.)

Defendants also present records for field utility which show that between May 9, 2014, and September 18, 2014, field utility inmates turned out for work on the following dates: May 12, 2014 (3.5 hours); May 20, 2014 (3.5 hours); May 21, 2014 (3.5 hours); May 22, 2014 (3.5 hours); June 5, 2014 (7 hours); June 17, 2014 (7.5 hours); June 20, 2014 (7.5 hours), July 24, 2014 (6 hours); July 29, 2014 (7hours); August 5, 2014 (7 hours ); August 7, 2014 (7 hours); August 13, 2014 (7 hours),

August 15, 2014 (7 hours), August 28, 2014 (7 hours); September 10, 2014 (7.5 hours). (Doc. No. 89-7) According to Defendant Phillips' declaration, he was in charge of supervising field riders and inmates, the hoe squad, field utility squad, and other crews, and was responsible for determining where the outside inmate crews worked on a given day. (Doc. No. 89-10) He recalled that Plaintiff complained to him on one occasion, that he was supposed to be assigned to one-hand duty, and Phillips told him his job assignment for that day (picking okra), could be completed with one hand. (Id., p. 2) Phillips did not recall any other complaints, or that Plaintiff had trouble keeping up with the outside work. (Id.) Phillips does not assign inmates jobs. (Id.) He recalled that Plaintiff filed a grievance accusing him of forcing inmates to perform strenuous labor beyond their physical capacity. (Id.; Doc. No. 89-8) Bargo also complained in the grievance that he was not provided a back brace or sunglasses, and was forced to pick and carry squash for an entire day. (Id.) Phillips stated that he is not provided sunglasses or back braces to issue to inmates. (Id., p. 3) According to the response to Plaintiff's grievance, Plaintiff was not under any physical restrictions at the time. (Doc. No. 89-8, p. 7)

In addition, Defendant Andrews stated in his declaration that he was a member of the classification committee which assigned Plaintiff to the field utility job in May, 2014, and did not recall that any of the committee members questioned or objected to the assignment, which was in conformity with Plaintiff's M-2 medical classification. (Doc. No. 89-2, p. 3)

In his Response, Plaintiff states that he was forced to perform physical labor beyond his capabilities, forced to urinate and defecate in the fields without portable toilets and without ways to sanitize his hands prior to eating, and was forced to handle chemicals and animal waste without the use of gloves. (Doc. No. 97).

"Prison work assignments are conditions of confinement subject to scrutiny under the Eighth

11

Amendment." Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993). To support an Eighth Amendment claim against Defendants Andrews and Phillips, Plaintiff must prove that they acted with deliberate indifference by knowingly compelling him to perform physical labor beyond his strength, or which constituted a danger to his health or unduly painful. (Id. at 1374, citing Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977) (per curiam). In this particular case, the undisputed evidence is that Andrews was a member of a committee which assigned Plaintiff to a job commensurate with his medical classification and restrictions. In addition, the facts show that Defendant Phillips did not assign Plaintiff to his job. (Doc. No. 89-6)[5] While Plaintiff alleges he was forced to carry squash in excessive heat, he provides no evidence that the job requirements were not commensurate with his medical classification and restrictions, or that he attempted to have his restrictions changed by the medical department. Therefore, there is no evidence to support a finding that Phillips acted with deliberate indifference to his health and safety. The job records also show that Plaintiff was not required to work every day during that summer of 2014, that during many of those days, the squad worked only in the morning hours, and that they were provided lunch breaks on the days they worked both morning and afternoon. (Doc. No. 89-7) Plaintiff also provides no evidence to rebut Defendant Phillips' statements in his affidavit that he was not responsible for providing back braces and sunglasses, and that those items are prescribed by the medical staff. (Doc. No. 89-10, p. 3) Although Plaintiff also complains about the use of inmates assigned to exercise authority over others, as by verbally abusing or physically prodding inmates to keep up with the work pace, he does not allege any specific incident involving him, or involving any injury. Similarly, he does not allege any particular incident causing harm as a result of the use of a "scabo"

---

[5]"Inmates are eligible for an assignment to the field utility squad if their medical classification is M-2 or M-3," unless limitations apply. (Doc. No. 89-6, p. 2)

technique to hoe the ground. And finally, his vague allegation that he was forced to carry 40-50 pound bags of squash fails to support a constitutional claim for relief, as he has not provided proof that the work was not commensurate to his medical classification, or that he suffered any injury.

Although the Court is somewhat concerned by Plaintiff's allegations that he was required to urinate and defecate in the fields, without any way of washing his hands prior to eating snacks or lunch, and that he was required to work with chemicals and animal waste without the use of gloves, Plaintiff again does not allege facts involving a specific incident which caused him harm. And the Court has not found any specific case law requiring prison officials to provide outdoor toilets, hand sanitizers, or gloves. Although inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a length course of time,[6] absent an allegation of harm the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

**IV.   Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 87) be GRANTED, and Plaintiff's Complaint against them be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 3rd day of October, 2016.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

---

[6] Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989).